UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | § | |
|---|---|---|
| iGEM COMMUNICATIONS LLC d/b/a GLOBALGIG, A TEXAS LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:24-cv-05649-DLC |
| MAG DS CORP. d/b/a MAG AEROSPACE | § § § § | |
| Defendant. | § § | |

## [PROPOSED] AGREED ORDER REGARDING ELECTRONIC DISCOVERY

Having considered the parties' Joint Motion and Proposed Agreed Order Regarding Electronic Discovery the Court hereby ORDERS as follows:

### SCOPE

1. The procedures and protocols set forth in this Order shall govern the search, disclosure, and format of electronic discovery material that will be produced for use in this litigation. This Order is intended to streamline eDiscovery to best carry out the requirements set forth in the Federal Rules of Civil Procedure.

2. The parties may alter the scope and requirements of this Order by agreement or for good cause by Order of the Court. Nothing in this Order is intended to waive any privileges or to impose obligations different from those contained expressly or implicitly in the Federal Rules of Civil Procedure.

## PRESERVATION OF ESI

3.  The parties acknowledge that each party has an obligation to take reasonable and proportional steps to preserve non-duplicative sources of discoverable electronically stored information ("ESI")[1] in the party's possession, custody, or control. However, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back up and archive ESI (or ESI otherwise not reasonably accessible or proportional to the issues in the case), unless the party has a reasonable basis to believe that a source is likely to contain non-duplicative ESI relevant to the case.

## DUTY OF COOPERATION

4.  The parties have a duty to cooperate in discovery. The failure of counsel or the parties to collaborate in good faith and to effectively identify responsive information in an efficient and proportional manner raises litigation costs and contributes to the risk of sanctions. The parties acknowledge that an attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.

## SEARCHING AND REVIEWING ESI

5.  **Search Methodology Disclosures.** The parties hereby agree that negotiations regarding search terms and other filtering methods are intended to be a cooperative and iterative process, involving a good faith exchange of information and proposals to facilitate the negotiations.

---

[1] ESI shall include information stored in any electronic medium.

2

6. Before undertaking any searches for ESI, the producing party shall disclose the search methodologies the producing party proposes to employ to identify potentially responsive documents, and make such disclosures regarding their proposed search methodology that will permit the requesting party to evaluate the proposed methodology and enable meaningful meet and confers. Such disclosures should include:

    a. Whether the producing party intends to fulfill its obligations to produce responsive documents by either: (i) producing all non-privileged documents that meet specified search terms or other filtering criteria, or (ii) subjecting documents that meet specified search terms or other filtering criteria to any human or automated responsiveness review; and

    b. An initial list of the search terms and any other filtering methods that the producing party intends to use on the corpus of collected documents (custodial data sources and non-custodial data sources) and, to the extent applicable, the proposed sequence.

    c. The above disclosures shall be made prior to undertaking any searches for ESI and at or within a reasonable time after the producing party serves its responses and objections to document requests.

7. **Search Term Development Process.** Upon receipt of the initial list of search terms and other disclosures as set forth above, the parties shall promptly meet and confer to attempt to reach agreement on the search methodology. To facilitate such meet and confers, the producing party shall, for example, discuss appropriate synonyms for proposed search terms and variations on search syntax, for example, using wildcard characters,

3

truncation, stem words, fuzzy logic and proximity terms to address over and under inclusiveness, and whether any testing and quality control measures may be conducted to evaluate the sufficiency of the search terms.

    a.    To the extent that a producing party asserts that any of the search terms proposed by the opposing party would be unreasonably overbroad or otherwise objectionable, and to enable meaningful meet and confer discussion, the producing party will produce hit reports that contain the following information: (i) the aggregate hits for each of the disputed terms (i.e., the number of documents returned by a search term), including on a "by custodian" level; (ii) the number of hits for each term including family members; (iii) the number of unique hits for each of the disputed terms (the number of documents which contain the particular search term, but no other), including on a "by custodian" level; and (iv) the file type of documents that the search term is returning.

    b.    With respect to any search term for which the requesting party believes there exists a modification that will reduce the number of documents returned by the search term, the parties will meet and confer to discuss in good faith any such modification. The producing party will, upon request, provide hit reports and other metrics to facilitate these discussions.

8.    **Process for Other Proposed Filtering Methods.** The parties agree to meet and confer prior to the use of any filtering methods like technology-assisted review ("TAR") and/or other advanced analytics to specified custodial and non-custodial data sources as a means of including or excluding documents to be reviewed for responsiveness or of culling

4

or otherwise limiting the volume of information to be reviewed for responsiveness. To the extent a producing party proposes to use search terms to pre-cull ESI prior to application of TAR and/or advanced analytics, prior to doing so, they shall meet and confer with the requesting party regarding whether such pre-culling is appropriate and if so, how it is to be applied.

## PRODUCTION

9. **Production Format.** Except as may otherwise be provided for herein or by mutual agreement of the parties, ESI must be produced in accordance with the specifications located on the attached **Exhibit A**.

10. **General Document Image Format.** Except as otherwise provided in this ESI Protocol, responsive ESI must be derived from the original electronic media and converted to TIFF or PDF color images (with a minimum resolution 300 D.P.I.), with an 8½ x 11 inch page size. Images shall be clearly labeled to show redacted, privileged, non-responsive, or otherwise protected material. The images must be endorsed with sequential Bates numbers and the appropriate confidentiality designation, if any. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document.

11. **Unitization.** In producing documents, distinct documents[2] shall not be merged into a single record, and single documents shall not be split into multiple records.

---

[2] For purposes of this Agreed Order, the term "document" shall be synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure. For avoidance of doubt, the term "document" shall include hard copy documents and ESI.

The producing party shall take reasonable steps to both physically and logically unitize ESI and hard copy documents. For example, documents stored in a binder or folder (hard copy or digital) shall be produced in the same order as they appear in the binder or folder.

12. **Text-Searchable Documents.** No party has an obligation to make its production text searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

13. **Native Format.** Unless it is not feasible to do so, all documents identified in § 2.e. of Exhibit A shall be produced in native format. The responding party shall title each file using a unique Bates number and a confidentiality designation, if any required. If the responding party redacts any information from a spreadsheet, such redacted spreadsheet shall be produced in redacted native format. The responding party may modify that spreadsheet solely and only insofar as necessary to effect necessary redactions. The parties agree to work cooperatively to determine mutually agreeable methods of redaction for any other document types. Notwithstanding the foregoing, each party reserves its right to later request the production in native format of a document.

14. **Unique IDs.** Each image should have a unique file name and should be named with the Bates number assigned to it. Files produced in native format will be accompanied by a slip sheet in image format with a Bates number assigned to the document as a whole.

6

15. **Parent-Child Relationships.** Parent-Child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable.

16. **Non-Responsive Family Members.** If a non-responsive parent document has a responsive attachment, the responding party shall produce the parent as well as all responsive attachments, but need not produce non-responsive attachments. If a responsive parent document has a non-responsive attachment, the responding party need not produce the non-responsive attachment.

17. **De-Duplication.** A producing party may elect to de-duplicate exact duplicates of documents only, provided that the producing party notifies the non-producing party of the producing party's intent to so de-duplicate prior to production of responsive documents and discloses the methodology that the producing party intends to use to effectuate such de-duplication. If a producing party elects to de-duplicate, deduplication shall occur at the family level to ensure that parent-child relationships are maintained. A "document family" includes, but is not limited to: (1) emails and their attachments and (2) files containing embedded documents. Deduplication may use MD5 hash values or other similar methodologies for identifying exact duplicates. However, deduplication must account for family relationships and ensure that family members are not inadvertently separated. Deduplication at the family level means evaluating all files in a family together, rather than individually by (1) generating a family hash by creating a composite hash value for the entire document family by combining the hash values of each parent and its attachments, and (2) comparing families by comparing composite hashes

7

across custodians and sources to identify duplicate families. Other methodologies that are substantially different for identification of duplicates must be discussed with the requesting party and approved in writing before implementation. The resulting hash value for each item shall be reflected in the MD5 Hash Value field specified in Exhibit A.

    a.    **Vertical de-duplication.** A producing party may de-duplicate documents vertically by Custodian, provided however, that an email that includes content in the BCC or any other field shall not be treated as a duplicate of an email that does not include the exact same content in the BCC or any other field, even if all remaining content in the email is identical.

    b.    **Horizontal de-duplication.** A producing party may de-duplicate documents horizontally (globally) across the population of records, if the producing party discloses to the receiving party that it has de-duplicated horizontally, and provided further that: (i) an email that includes content in the BCC or any other field shall not be treated as a duplicate of an email that does not include the exact same content in the BCC or any other field, even if all remaining content in the email is identical; and (ii) all Custodians who were in possession—that is, who sent or received, including as a recipient of carbon copies, blind carbon copies, forwarded messages or otherwise—of a de-duplicated document and the directory structure where the Custodian stored the de-duplicated document must be identified in the "Custodian — All" metadata field specified in Exhibit A.

18.    **Email Thread Suppression.** Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is

one that includes all of the prior or lesser-included emails and attachments, including each brand of the email thread. A producing party may suppress lesser-included emails if and only if the lesser-included emails and any attachments are contained within or attached to the most inclusive email thread.

19. **Redacted Documents.** Documents should only be redacted to protect privileged information, which must be identified on a privilege log as set forth in the Assertions of Privilege section below, or as allowed by the Federal Rules of Civil Procedure. In the event a document is redacted, the full text should be replaced with OCR text that excludes the redacted material.

   a. When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable and a production Load File field should be populated to indicate the document contains a redaction.

   b. If a document to be produced in native format requires redaction, then it should be produced as TIFFs.

20. **Text Files.** For documents that are produced in a text-searchable format, subject to the limitations of paragraph 12 hereinabove, each such document shall be accompanied by a single, multipage text file containing all of the text for that document (as opposed to one text file per page of such document). Each text file shall be named using the Bates number of the first page of the corresponding production item. The text of each file shall be extracted directly from the native file. To the extent that it is not technically possible (e.g., the underlying native file is an image file), the text for each item shall be generated by applying OCR to the native field. The full text shall be provided on a document-level basis

in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files shall be provided in a "text" folder. To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made (e.g., with the notation "redacted").

21. **Attachments**. Email attachments and embedded files must be mapped to their parent document by the Bates number by including a "Beg Attach" field designating the beginning of each such attachment and "End Attach" field designating the end of each such attachment. If attachments and embedded files cannot be separated from their parent documents, then "Beg Attach" and "End Attach" fields listing the unique beginning and ending Bates number for each attachment or embedded document must be included. Non-substantive automatically-generated embedded files, such as logos, embedded non-substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced as separate attachments. To the extent they are maintained together, all documents in a document family shall be consecutively Bates number stamped with the child documents produced immediately after the parent document.

22. **Embedded Documents**. Embedded documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as an independent document, and related back to the respective top-level parent document (e.g., standalone file, email message, etc.) via the "Beg Attach" and "End Attach" field referenced in Exhibit A. Related embedded documents will be produced within a continuous Bates number range.

23. **Assertions of Privilege.** Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

24. The parties hereby agree that a producing party may redact or, to the extent necessary, withhold a document if it is protected by attorney-client privilege, the work-product doctrine, or any other reasonably applicable privilege from disclosure, provided that all such redactions or withheld information are promptly identified and disclosed in a privilege log pursuant to Local Civil Rule 26.2. The parties further agree that:

   a. Privilege logs shall be provided in Excel format and shall contain at least the following information for each responsive document withheld or redacted: (i) a unique privilege log identifier or, in the case of redacted documents, the Bates number assigned to such document; (ii) the date of the document; (iii) the identity of the persons who sent (and, if different, the identity of all persons who authored or signed) the document and the addresses, recipients, copyees, and blind copyees, each separately identified by those categories), and identification of which of them are attorneys; (iv) a description of the subject matter of the information contained in the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (v) the type or nature of the privilege asserted (i.e., attorney-client privilege or work product doctrine, and if such other privilege or immunity is asserted it shall be separately identified; (vi) an indication of whether

11

the document has been redacted and produced or withheld in its entirety; and (vii) for all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, such names shall include some indication that the individual is an attorney. If a producing party identifies portions of a document and redacts such portions of the document pursuant to this Agreed Order, the producing party must log the fact of each document's redaction.

    b.    As an alternative to manually entering the information required in the section above, a portion of each producing party's privilege log may be generated by exporting objective metadata from the review tool used to identify privileged or work-product protected documents where the objective metadata provides the same information required under the section above. Such metadata shall include at least the following: (i) a unique privilege log identifier or, in the case of redacted documents, the Bates number assigned to such document; (ii) author/custodian; (iii) From; (iv) To; (v) CC; (vi) BCC; (vii) date sent, received, or created; (viii) document type (e.g., message, attachment, loose file); (ix) file name; (x) file size; and (xi) page count.

    c.    All disputes related to the privilege shall be resolved in accordance with the Local Rules and Judge Cote's Individual Practices in Civil Cases.

    d.    Privilege logs shall be produced within 30 days following production of the first production volume and shall be supplemented within a reasonable time following each subsequent production where production occurs on a rolling basis, or by another date upon agreement of the requesting and producing parties. The

parties, as appropriate, shall meet and confer to reach agreement regarding what constitutes such reasonable time.

25. **Non-Waiver.** The production of privileged or work-product protected documents, ESI, or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Agreed Order shall be interpreted to provide the maximum protection allowed by the Federal Rules of Civil Procedure.

   a. If a producing party discovers it has produced information or documents that it claims is privileged and/or exempt from discovery as protected work product, it may request its return in writing (a "claw back" request). Within seven (7) days of receipt of a claw back request, the receiving party must either return and/or destroy all paper and electronic copies of the information covered by the claw back request and confirm in writing it has complied with its obligation to return and/or destroy the information. The producing party must identify any such clawed-back document as such on its privilege log.

   b. If a receiving party discovers it has received information that appears to be privileged and/or exempt from discovery as protected work product, it must inform the producing party in writing. Within seven (7) days of receipt of such notification, the producing party may issue a written claw back request, which must be honored in accordance with the preceding subparagraph.

Dated: February 5, 2025.

So ordered,

*Denise Cote*
2/5/25

                                                DENISE L. COTE
                                                UNITED STATES DISTRICT JUDGE

AGREED AND ENTRY REQUESTED:

**WILLIAM A. MUNCK**
State Bar No. 2639409
wmunck@munckwilson.com
**ILANA G. ZELENER** *(Admitted PHV)*
State Bar No. 24132282
izelener@munckwilson.com
2000 McKinney Ave., Ste 1900
Dallas, TX 75201
972-628-3600
972-628-3616 (facsimile)

-AND-


By: */s/ J. David Rowe*
**J. DAVID ROWE** *(Admitted PHV)*
State Bar No. 00794564
drowe@munckwilson.com
807 Las Cimas Parkway, Suite 300
Austin, Texas 78746
737-201-1607 *tel.*
737-201-1601 *fax.*

*ATTORNEYS FOR PLAINTIFF*

By: */s/ Mark H. Churchill (with permission)*
Mark H. Churchill (admitted pro hac vice)
Christian B. Hecht (admitted pro hac vice)
Holland & Knight, LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
t. 703.720.8600
f. 703.720.8610
mark.churchill@hklaw.com
christian.hecht@hklaw.com

-and-

Stosh Silivos
(Bar No. 5193776)
Holland & Knight, LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
t. 212.513.3533
f. 212.385.9010
stosh.silivos@hklaw.com

**Counsel for Defendant MAG DS Corp. d/b/a MAG Aerospace**